## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JOHN E. COLE,

        Plaintiff,

v.                                Case No.:  3:20-cv-935-MMH-PDB

SERGEANT MATTHEW ESELY, et al.,

        Defendants.

_____

## ORDER

### I.  Status

Plaintiff John E. Cole, an inmate of the Florida penal system, initiated this action on August 16, 2020,[1] by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1, Complaint). Cole names as Defendants Sergeant Matthew Esely, Officer Z. Wilson, and Officer J. Mallard (Defendants), all of whom are correctional officers employed by the Florida Department of Corrections (FDOC). Cole alleges that Defendants used excessive force against him in violation of his rights under the Eighth Amendment. As relief, Cole seeks (1) an injunction to protect him from future violence, (2) an order that Defendants be fired and criminally charged, (3) $100,000 in compensatory

---

[1]    See Houston v. Lack, 487 U.S. 266 (1988) (prison mailbox rule).

1

damages and $100,000 in punitive damages against each Defendant, and (4) any other relief the Court deems appropriate.

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 15, Motion), with exhibits. Cole opposes the Motion. (Doc. 25, Response). Defendants did not file a reply to the response. See Rule 3.01(d), M.D. Fla. Local Rules. Thus, the Motion is ripe for review.

## II. Cole's Allegations

Cole alleges that on April 4, 2020, while he was handcuffed, Defendants Esely, Wilson, and Mallard beat him "for no apparent reason." Complaint at 5. Cole states that, earlier that day, he woke up on the floor of his assigned cell and his cellmate told him he had suffered a seizure. Id. When the nurse arrived, Cole was handcuffed and escorted to the mezzanine of the I-Dormitory, where, according to Cole, "there's a blind spot where the cameras can't see." Id. After the nurse "cleared" Cole, he alleges he was struck from behind. Id. at 5–6. Cole states that he fell to the floor, and "then all three [D]efendants began to kick and punch [him] in the face, legs, and back." Id. at 6. Additional officers then arrived and four officers carried Cole to the medical department. Id.

As a result of Defendants' actions, Cole alleges that he had to receive surgery on his left ring finger. Id. Cole states that his left ring finger "is permanently disfigured and in constant pain." Id. He also alleges that his lower back "is in constant pain" as well. Id. In addition, Cole states that he has

2

"suffered mentally and had to be placed on additional medication." Id.

### III.   Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure (Rules(s)), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[2] An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for

---

[2]     Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions." Rule 56 advisory committee's note 2010 Amends.

> The standard for granting summary judgment remains unchanged. The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law. The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id. "[A]lthough the interpretations in the advisory committee['s] notes are not binding, they are highly persuasive." Campbell v. Shinseki, 546 F. App'x 874, 879 n.3 (11th Cir. 2013). Thus, case law construing the former Rule 56 standard of review remains viable.

summary judgment." <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. <u>See</u> <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal citations and quotation marks omitted). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson</u>, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." <u>Haves v. City of Miami</u>, 52 F.3d 918, 921 (11th Cir. 1995) (citing <u>Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro</u>, 38 F.3d 1571, 1578 (11th Cir. 1994)). "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." <u>Guevara v. NCL (Bahamas) Ltd.</u>, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks and citation omitted).

## IV.   Summary of the Arguments

In the Motion, Defendants argue that they are entitled to "partial"[3] summary judgment on three grounds: (1) Cole is not entitled to an injunction because he has been transferred to a different facility; (2) they are immune from suit to the extent Cole sues them in their official capacity for monetary damages; and (3) they are entitled to qualified immunity. Motion at 8–13. Cole did not respond to the first two arguments but he addressed the third. <u>See generally</u> Response (Doc. 25). In doing so, Cole maintains that there is a genuine dispute of material fact which precludes the entry of summary judgment in Defendants' favor on the excessive force claim. <u>Id.</u>

## V.  Law

## A. Excessive Force

Pursuant to the Eighth Amendment to the United States Constitution, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. With respect to the appropriate analysis in an excessive use of force case, the Eleventh Circuit

---

[3]    "Partial" summary judgment is a misnomer because Defendants argue they are entitled to qualified immunity, and qualified immunity is a complete defense both from liability and from suit. <u>Gilmore v. Hodges</u>, 738 F.3d 266, 272 (11th Cir. 2013). Therefore, the Motion is really a motion for summary judgment.

has explained:

> [O]ur core inquiry is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).

McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam). When considering these factors, courts "must also give a 'wide range of deference to prison officials acting to preserve discipline and security,' including when considering '[d]ecisions made at the scene of a disturbance.'" Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (quoting Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990)).

"The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10 (internal quotations and citations omitted). Indeed, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9 (citation omitted). Notably, a lack of serious injury, while not dispositive, is relevant to the inquiry. See Smith v. Sec'y, Dep't of Corr., 524 F. App'x 511, 513 (11th Cir. 2013) (per curiam)

6

(quoting <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 38 (2010) (per curiam)). The United States Supreme Court has explained:

> "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." <u>Ibid.</u>[4] (quoting <u>Whitley</u>,[5] <u>supra</u>, at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied....An inmate who complains of a " 'push or shove' " that causes no discernible injury almost certainly fails to state a valid excessive force claim. <u>Id.</u>, at 9 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).[6]
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

<u>Wilkins</u>, 559 U.S. at 37–38.

## B. Qualified Immunity

The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).

---

[4]    <u>Hudson</u>, 503 U.S. at 7.

[5]    <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

[6]    <u>See</u> <u>Johnson</u>, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S. Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120–21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850–51 (11th Cir. 2017).

The Eleventh Circuit has further instructed:

Because § 1983 "requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation," Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (citation omitted), each defendant is entitled to an independent qualified immunity analysis as it relates to

8

his or her actions and omissions. So[,] we must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions and omissions in which that particular defendant engaged.

Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018).

## VI.   Analysis and Conclusions

## A. Qualified Immunity

The Court first addresses Defendants' assertion that they are entitled to qualified immunity. Motion at 12–13. The sum of Defendants' argument is that they "committed no constitutional violation. Defendants were performing discretionary duties in their dealings with [Cole] when the incident occurred, and therefore, are entitled to qualified [i]mmunity." Id. at 13.

"In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley." Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) (citing Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002)).

There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or a motion for summary judgment. If he has done so, that is the end of the inquiry.

Skrtich, 280 F.3d at 1301 (internal citation omitted).[7] Therefore, as for Cole's Eighth Amendment excessive force claim against Defendants, the qualified immunity analysis begins and ends with determining whether Cole has presented record evidence sufficient to survive a motion for summary judgment.[8]

In support of their Motion, Defendants submit four exhibits: a collection of incident reports related to the events of April 4, 2020 (Doc. 15-1, Exhibit A) and three disciplinary reports that were later issued to Cole (Doc. 15-2, Exhibit B; Doc. 15-3, Exhibit C; Doc. 15-4, Exhibit D). In a use-of-force report, Defendant Wilson wrote:

> At approximately 17[:]40 hours on April 4, 2020, while assigned as Hospital Security Officer, I was present in the mezzanine of India-Dormitory due to an ICS that was initiated for Inmate Cole, John DC #438121 (I4116U) for a possible medical emergency. Upon my arrival with medical staff, Inmate Cole was coherent and spoke rationally. Once assessed and cleared by medical staff, medical staff departed I-Dormitory and I removed the hand restraints from Inmate Cole. At this time, Inmate Cole suddenly became extremely combative and struck me in the head and upper torso area with a closed fist. I immediately grasped Inmate Cole by the upper torso area in an attempt to subdue

---

[7]     In Johnson v. Breeden and Fennell v. Gilstrap, 559 F.3d 1212 (11th Cir. 2009), the Eleventh Circuit concluded that qualified immunity is not available for excessive force claims arising under the Eighth and Fourteenth Amendments, reasoning that "'the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution….'" Fennell, 559 F.3d at 1217 (quoting Breeden, 280 F.3d at 1321–22). Recently, in light of Kingsley v. Hendrickson, 576 U.S. 389 (2015), the Eleventh Circuit abrogated this exception for excessive force claims under the Fourteenth Amendment, but said that "the Johnson/Fennel exception continues to apply to Eighth Amendment claims" such as the one here. Patel v. Lanier Cnty., Ga., 969 F.3d 1173, 1185–86 (11th Cir. 2020).

[8]     Cole does not dispute that, for purposes of qualified immunity, Defendants were acting within the scope of their discretionary authority at the time of the incident.

him and place him in hand restraints to no avail. With the assistances of Officer Jesse Mallard and Sergeant Matthew Esely, we directed Inmate Cole to the counter in the mezzanine area. Inmate Cole continued to try to strike me and aggressively resist against our efforts to restrain him. Inmate Cole was then redirected face down to the floor of the mezzanine. I placed Inmate Cole in leg restraints while Officer J. Mallard and Sergeant M. Esely applied hand restraints. Once Inmate Cole was secured in restraints all force ceased. The Shift OIC was notified and instructed this report to be written.

Exhibit A at 1. Defendants Mallard and Esely gave similar accounts in their use-of-force reports. Id. at 5, 7. Defendant Mallard added that Cole struck him in the left ear and attempted to bite him, id. at 5, and Defendant Esely remarked that Cole headbutted him, id. at 7.

After an initial review of the incident, the warden of the facility concluded that the use of force appeared to have been in compliance with section 33-602.210 of the Florida Administrative Code (FAC), "pending further review by the inspector and use of force unit." Id. at 1. The warden also noted that the incident was "captured on handheld video, fixed wing video and chain of custody [was] established." Id. However, Defendants did not submit the camera footage in support of their Motion.

After the incident, a registered nurse performed a post-use-of-force exam on Cole. Id. at 13. The nurse recorded Cole's vital signs and noted that he was ambulatory, alert, oriented, responsive to questions, and that he complained of facial pain at a "3/10." Id. In the examination summary, the nurse wrote of Cole:

> Speaks [with] clear voice making needs known, ambulates without assistance. Complains only of mild facial pain [at] this time. PEARLA–3 brisk reaction. Injuries noted as #1 superficial laceration [right] [indecipherable] > 0.5 cm no depth or width. #2 superficial laceration [left] periorbital area > 0.5 cm no depth or width. [#3] [Right] medial calf bruising. #4 [Left] 4th digit mild edema.

Id. The nurse cleansed Cole's lacerations, gave him Tylenol, and obtained x-rays of the face and left hand. Id. Cole tolerated treatment well. The nurse also submitted an orthopedic consult for a "previous dislocation" of the fourth digit. Id.

Six days after the incident, on April 10, 2020, an FDOC officer found Cole guilty of committing battery on Defendants Wilson, Mallard, and Esely. Exhibits B, C, D. As a result, Cole received three disciplinary reports and was ordered to serve a period of time in disciplinary confinement.

In his Response, Cole states that "Defendants base their argument for summary judgment solely on their version of events and the inferences that defendants draw therefrom, asking the Court to take the facts in the light most favorable to the movants" and "to completely reject the plaintiff[']s version of the facts." Response at 1. Cole states that on April 4, 2020, he was in his cell preparing for the headcount when he fell to the floor unconscious. Id. at 1–2. Cole says he woke up to the officers and his cellmate telling him to remain on the floor until medical staff arrived. Id. at 2. Cole was then handcuffed, shackled, and escorted to the quarterdeck of the "(I) Block," where the nurse arrived and questioned Cole. Id. The nurse cleared Cole to return to his cell

12

and Cole exited the dorm. <u>Id.</u> According to Cole, while he "was still handcuffed and shackled he was struck on the side of his head and knocked to the floor where the officers began to kick and punch him." <u>Id.</u> More officers then arrived and they escorted Cole to urgent care while he was still in handcuffs and shackles. <u>Id.</u> Cole states:

> While being escorted plaintiff informed officers that his legs were fatigued and wasn't able to walk. The officers began to carry the plaintiff until someone yelled "Drop him on his face." Plaint[iff] was drop[p]ed on his stomac[h] then picked up and forced to walk to urgent care where he was treated for his injuries.

<u>Id.</u> Cole argues there is a genuine dispute of material fact about what happened, which precludes granting Defendants summary judgment. <u>Id.</u> at 2–3. He further contends that he has presented more than a scintilla of evidence to support his claim because his allegations are based on firsthand knowledge of the events. <u>Id.</u> at 3 (citing <u>Kesinger</u>, 381 F.3d at 1249 (holding that plaintiff failed to produce more than a "scintilla" of evidence to oppose summary judgment where plaintiff's most favorable evidence came from a witness who had an incomplete and obstructed view of events, and whose testimony was "contradicted by the undisputed, clearly demonstrated, photographed physical evidence.")).

Although Cole's Response is not sworn, the allegations in his Complaint are. The facts alleged in the Complaint are substantially similar to the version of facts Cole sets forth in the Response. <u>Compare</u> Complaint at 5–6 <u>with</u>

Response at 1–2. Indeed, in his sworn Complaint, Cole avers that on April 4, 2020, in the mezzanine of the I-Dormitory, Defendants Esely, Wilson, and Mallard beat him while he was handcuffed "for no apparent reason." Complaint at 5. He avers that after the nurse cleared him to return to his cell, he was struck from behind. Cole states that he fell to the floor, at which point each Defendant began to kick and punch him in the face, legs, and back. Id. at 5–6. As a result, Cole states that he suffers from lower back pain, a deformed left ring finger, and mental anguish. Because Cole declared under penalty of perjury that the allegations in the Complaint were true and correct, see id. at 7, the Court treats those facts as if set forth in an affidavit for purposes of summary judgment. Sears v. Roberts, 922 F.3d 1199, 1206 (11th Cir. 2019) (stating that district court should have treated plaintiff's statements in his verified complaint, sworn response to motion for summary judgment, and sworn affidavit as if it were testimony); Barker v. Norman, 651 F.2d 1107, 1115 (5th Cir. Unit A July 30, 1981) (stating that a verified complaint serves as the equivalent of an affidavit for purposes of summary judgment).[9]

Viewing the record evidence in the light most favorable to the non-movant (Cole) and drawing all reasonable inferences in his favor, as the Court

---

[9]     Unit A panel decisions of the former Fifth Circuit Court of Appeals, if rendered before October 1, 1981, are binding in the Eleventh Circuit Court of Appeals. See Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982); Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

must, a genuine dispute of material fact precludes the entry of summary judgment in Defendants' favor. Although Cole's allegations are scant, they "contain 'non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety.'" Sears, 922 F.3d at 1208 (quoting Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013)). And those allegations, taken in the light most favorable to Cole, suggest that Cole was restrained and not actively resisting Defendants at the time they allegedly struck him, such that the force complained of was excessive and unnecessary. "That [Cole's] evidence consists mainly of his own testimony in his verified complaint … does not preclude a finding that a genuine dispute of material fact exists." Id. The Eleventh Circuit's "cases correctly explain that a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." United States v. Stein, 881 F.3d 853, 857 (11th Cir. 2018) (en banc).

Defendants, through use-of-force and disciplinary reports, offer a starkly different version of events. According to Defendants, Cole assaulted the officers without provocation, the officers had to use force to subdue him, and Cole violently resisted their efforts to restrain him. Exhibit A at 1, 5, 7; Exhibits B, C, D. But "the officers' documentary evidence," i.e., use-of-force reports and disciplinary reports, "consists mainly of various forms of their own testimony." Sears, 922 F.3d at 1208. "Those reports just pit the correctional officers' word

against [Cole's] word." Id. That presents the Court with "a classic swearing match, which is the stuff of which jury trials are made." Feliciano, 707 F.3d at 1253. A jury may conclude Defendants' version of the facts to be true, but on the limited record before it, the Court cannot say there is no genuine dispute of material fact.

Taken in the light most favorable to Cole, the facts suggest that Defendants Esely, Wilson, and Mallard used force "maliciously and sadistically for the very purpose of causing harm." Cockrell, 510 F.3d at 1311. There is also a genuine dispute whether the "alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson, 503 U.S. at 8. Because Cole alleges facts sufficient to survive summary judgment on the question of whether he can establish a constitutional violation, the qualified immunity inquiry ends there. Skrtich, 280 F.3d at 1301. As such, on the issue of Defendants' entitlement to the defense of qualified immunity, the Motion is due to be denied.

## B. Injunctive Relief

Defendants also argue that Cole is not entitled to injunctive relief because the alleged incident occurred at the Reception and Medical Center (RMC) Main Unit and Cole has since been transferred to a different facility. Motion at 8. Cole is now housed at Santa Rosa Correctional Institution. Defendants contend that Cole's change in circumstances moots the request for

injunctive relief. Id. Cole does not address this argument in his Response. See generally Response.

"The general rule in [the Eleventh Circuit] is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief." Smith v. Allen, 502 F.3d 1255, 1267 (11th Cir. 2007), overruled on other grounds by Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021), and abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011). "The reason for this rule is that injunctive relief is 'a prospective remedy, intended to prevent future injuries.'" Id. (quoting Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997)). As a result, once a prisoner has been transferred to another facility, the Court lacks the ability to grant injunctive relief and to correct the circumstances of which the inmate complained. Id. (citing Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985)); see also Davila v. Marshall, 649 F. App'x 977, 979–80 (11th Cir. 2016) (stating that "a prisoner's request for injunctive relief relating to the conditions of his confinement becomes moot when he is transferred." (quoting Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988))); Lovett v. Quezada, No. 2:17-cv-422-SPC-MRM, 2020 WL 1308187, at *3 (M.D. Fla. Mar. 19, 2020) (finding prisoner's request for injunctive relief moot, where prisoner alleged that correctional officers used excessive force, after inmate was transferred to a different facility).

Here, Cole's transfer to a different facility, away from Defendants, moots his request for injunctive relief. Cole does not argue that any exception to the mootness doctrine applies, that he is likely to be sent back to the RMC, or that there is "any continuing, present injury or real and immediate threat of repeated injury." Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985).[10] As such, Defendants' Motion is due to be granted to the extent Cole's request for injunctive relief against Defendants will be dismissed as moot.

Additionally, Cole asks that the Court order Defendants to be fired and to face criminal charges. However, "the Court neither has the authority to direct the FDOC to terminate Defendants' employment" nor to order the State of Florida to criminally prosecute Defendants. Sanders v. Starling, No. 3:19-cv-430-MMH-JBT, 2021 WL 3055046, at *10 (M.D. Fla. July 20, 2021).

### C. Eleventh Amendment Immunity

Finally, Defendants assert that, to the extent Cole sues them for monetary damages in their official capacities, they are entitled to Eleventh Amendment immunity. Motion at 11–12. Again Cole fails to address this argument in his Response.

> The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

---

[10]   According to the FDOC, Cole remains confined at Santa Rosa Correctional Institution. See FDOC Corrections Offender Network, www.dc.state.fl.us/offenderSearch (last visited January 13, 2022).

State." U.S. Const. amend. XI. It is well established that, in the absence of consent, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." <u>Papasan v. Allain</u>, 478 U.S. 265, 276, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (quotation omitted). The Eleventh Amendment also prohibits suits against state officials where the state is the real party in interest, such that a plaintiff could not sue to have a state officer pay funds directly from the state treasury for the wrongful acts of the state. <u>Summit Med. Assocs., P.C. v. Pryor</u>, 180 F.3d 1326, 1336 (11th Cir. 1999).

<u>Hayes v. Sec'y, Fla. Dep't of Children & Families</u>, 563 F. App'x 701, 703 (11th Cir. 2014) (per curiam). In <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. <u>Quern v. Jordan</u>, 440 U.S. 332, 340-45, 99 S. Ct. 1139, 1144-45, 59 L. Ed. 2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. <u>See</u> <u>Gamble</u>, 779 F.2d at 1513-20.

Accordingly, in <u>Zatler</u>, the court found that the FDOC Secretary was immune from suit in his official capacity. <u>Id.</u>

In the Complaint, Cole did not specify whether he was suing Defendants in their official capacities or their individual capacities. Insofar as Cole may be seeking monetary damages from Defendants in their official capacities, the Eleventh Amendment bars suit. Therefore, Defendants' Motion is due to be granted to the extent Cole requests monetary damages from Defendants in their official capacities.

In light of the foregoing, it is hereby **ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. 15) is **GRANTED** to the extent judgment is due to be entered in favor of Defendants with respect to Cole's request for injunctive relief, which is dismissed as moot, and Cole's request for monetary damages against Defendants in their official capacities.

2. The Motion (Doc. 15) is **DENIED** in all other respects.

3. By **March 18, 2022**, the parties shall confer in good faith in attempt to resolve the remaining claims. If the parties reach a settlement, they shall promptly notify the Court. If the parties cannot settle the claims privately, Defendants must file a notice advising whether the parties believe a settlement conference with the United States Magistrate Judge would be beneficial.

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of January, 2022.

_Marcia Morales Howard_

**MARCIA MORALES HOWARD**
United States District Judge

lc 19

C:
Counsel of record
Pro se plaintiff